mary because the patient was a covered person under plaintiff's plan but only a dependent under his wife's plan. During that time frame, Blue Cross was unaware that the patient was retired and eligible for Medicare. In January 1992 Blue Cross discovered that the patient was retired and subsequently discovered that he was eligible for Medicare. Initially, Blue Cross adjusted the claims by shifting the charges to Community as primary insurer. Later, Blue Cross rescinded that adjustment and again charged the claims against Cooperative as primary for the period in dispute. However, Blue Cross further determined that, commencing January 1, 1992, Community was primary. Cooperative thereafter commenced this action.

The court erred in granting the motion of Community for summary judgment dismissing the complaint against it. There are triable questions of fact concerning who is at fault for Blue Cross's lack of awareness of the patient's status. Moreover, Community failed to sustain its burden of demonstrating its entitlement to judgment as a matter of law by showing a legal or contractual basis for deeming its plan secondary to Cooperative's plan. We reject the argument that, under the present circumstances, Federal law is irrelevant and inapplicable until Medicare is actually required to pay a claim (*cf., Baptist Mem. Hosp. v Pan Am. Life Ins. Co.,* 45 F3d 992, *cert denied* 516 US 824). Indeed, apart from the issue of Cooperative's potential liability for Blue Cross's lack of notice of the patient's status, it appears on this record that, under the terms of the respective plans and Federal law, Community's plan is primary. Although both plans exclude coverage in the event of the patient's eligibility for Medicare, Federal law nullifies Community's exclusion because that plan is attributable to the current employment of the patient's spouse (*see,* 42 USC § 1395y [b] [1] [A] [i] [II]). On the other hand, the exclusion in Cooperative's plan is valid and enforceable because coverage under that plan is not attributable to the current employment of the patient or his spouse (*see,* 42 USC § 1395y [b] [1] [A] [i] [II]). (Appeal from Order of Supreme Court, Onondaga County, Stone, J.—Summary Judgment.) Present—Green, J. P., Lawton, Doerr, Balio and Fallon, JJ.

■ NIAGARA FRONTIER TRANSPORTATION AUTHORITY, Respondent, v PATTERSON-STEVENS, INC., et al., Appellants. (Action No. 1.) PATTERSON-STEVENS, INC., Plaintiff, v NIAGARA FRONTIER TRANSPORTATION AUTHORITY, Defendant. (Action No. 2.) (Appeal No. 1.) [656 NYS2d 1023] —Appeal unanimously dismissed without costs (*see, Loafin' Tree Rest. v Pardi* [appeal No. 1], 162 AD2d 985). (Appeal from Order and Judgment of

Supreme Court, Erie County, Whelan, J.—Dismiss Causes of Action.) Present—Lawton, J. P., Doerr, Balio and Fallon, JJ.

■■■ NIAGARA FRONTIER TRANSPORTATION AUTHORITY, Respondent, v PATTERSON-STEVENS, INC., et al., Appellants. (Action No. 1.) PATTERSON-STEVENS, INC., Plaintiff, v NIAGARA FRONTIER TRANSPORTATION AUTHORITY, Defendant. (Action No. 2.) (Appeal No. 2.) [654 NYS2d 526] —Order unanimously modified on the law and as modified affirmed without costs in accordance with the following Memorandum: In this appeal, Niagara Frontier Transportation Authority (NFTA) is the plaintiff in action No. 1 and the defendant in action No. 2; Patterson-Stevens, Inc. (Patterson), is a defendant in action No. 1 and the plaintiff in action No. 2.

Supreme Court erred in granting that part of NFTA's cross motion to dismiss Patterson's first and sixth causes of action in their entirety. It is well settled that, where the language of a release is clear and unambiguous, "effect will be given to the intention of the parties as indicated by the language employed and the fact that one of the parties may have intended something else is irrelevant" (LeMay v H. W. Keeney, Inc., 124 AD2d 1026, 1027, lv denied 69 NY2d 607; see also, Thailer v LaRocca, 174 AD2d 731, 733). Here, NFTA and Patterson executed a Mutual Release/Waiver (Release) on July 31, 1992, in which Patterson agreed to waive "all claims * * * against [NFTA] arising from or associated with panel installation under [the Contract], Specification 02520 (Part 3)". Because panel fabrication (first cause of action) and the grouting "all voids" procedure (sixth cause of action) are individual steps in the panel installation process as defined in part 3 of the specification, they are unambiguously included by the terms of the release. However, "[a] release may not be read to cover matters which the parties did not desire or intend to dispose of" (Lefrak SBN Assocs. v Kennedy Galleries, 203 AD2d 256, 257). Here, there is no clear language in the release indicating that Patterson agreed to waive future or continuing claims arising out of panel installation (cf., Northrup Contr. v Village of Bergen, 129 AD2d 1002). Moreover, at the time the release was executed, Patterson apparently had installed only 30% of the panels required for the project. Thus, the first and sixth causes of action, including affiliated delay damages, are dismissed only to the extent of claims accruing on or before July 31, 1992.

Patterson's contention that there is a failure of consideration is without merit. NFTA agreed in the release to waive its right to assess liquidated damages arising from or associated with